UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
BRUCE KING,

                              **MEMORANDUM & ORDER**

                Petitioner,                      03-CV-6073 (NGG)

        -against-

WILLIAM E. PHILLIPS, Superintendent,
Green Haven Correctional Facility,


                Respondent.
----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner pro se Bruce King ("Petitioner") brings this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Petition (Docket Entry # 2.). Petitioner challenges his conviction rendered in 1998 in Supreme Court, Queens County for one count of Robbery in the First Degree. For the reasons set forth below, the Petition is DENIED.

I.    **Background**

This case arises out of a robbery at a Martin Paints store in Jamaica, Queens on December 10, 1995.

Anthony Appelwhaite, the assistant manager of the store, testified at trial that he was closing up the store on that day when he saw a man, whom he identified as Petitioner, standing outside the store, leaning against a light pole. (Trial Tr. 365-66, 368, 370.) Appelwhaite then returned into the store, turned on the alarm, and exited the store through the employees' exit. (Id. at 371-72.) As he was pulling down the gate in front of the store, Petitioner ran up, pointing a gun at him. (Id. at 373.) Petitioner forced Appelwhaite to open the door and to enter the store with him. (Id. at 375, 385.) He turned on the lights in the store and told Applewhaite to turn off

1

the alarm. (Id. at 385.) Petitioner then put a clear mask over his face. (Id. at 387.) He forced Applewhaite to put the money from the store's safes and the cash register into his knapsack. (Id. at 389-94.) Petitioner then pushed Applewhaite into the bathroom and locked the door. (Id. at 395.)

Twenty days later, on December 30, 1995, Applewhaite was again working at Martin Paints when Petitioner re-entered the store. (Id. at 397.) After Petitioner left the store, Applewhaite told the store's manager and the cashier that Petitioner was the man who had robbed the store. (Id. at 399.) A customer who overheard Applewhaite then went outside and recorded the license plate number of the car Petitioner drove off in. (Id. at 399.)

On January 2, 1996, Applewhaite identified Petitioner in a six-person lineup at the 103rd precinct. (Id. at 401.)

At trial, defense counsel introduced Applewhaite's grand jury testimony, directly contradicting his trial testimony, that Petitioner had had a mask on *outside* the store which he then took off *inside* the store. (Id. at 437.) Defense counsel also introduced a police report written by Detectove Wiencko, the first detective who interviewed Applewhaite, which suggested that Applewhaite initially told him that he could not identify his attacker because he was wearing a mask. (Id. at 527.)

At the conclusion of trial, Petitioner was convicted, and on January 20, 1998 he was sentenced to a term of ten to twenty years. Petitioner is currently incarcerated.

## II. Procedural History

On May 16, 2000, Petitioner filed an appeal in the Appellate Division of the Supreme Court, State of New York, which he supplemented with a brief filed on September 28, 2001. Petitioner's claims in his original brief were that (1) his right to a speedy trial was violated; (2)

2

the trial court improperly admitted testimony relating to other bad acts by Petitioner; and (3) the prosecutor made improper statements during summation. (Brief for Defendant-Appellant, May 2000 (Docket Entry # 16).) In his supplemental brief Petitioner claimed that he was denied the effective assistance of counsel because trial counsel (1) failed to conduct any pre-trial investigation; (2) failed to move to dismiss the indictment because of improper conduct by the prosecutor in the grand jury; (3) failed to move for a mistrial after inappropriate comments were made by the prosecutor; and (4) failed to object to the prosecutor's summation. (Supplemental pro se Brief (Docket Entry # 16).) On April 15, 2002 the Appellate Division affirmed Petitioner's judgment of conviction, denying all of his claims on the merits. People v. King, 293 A.D.2d 628 (2d Dep't 2002). The Court of Appeals denied Petitioner leave to appeal on July 12, 2002. People v. King, 98 N.Y.2d 698 (2002). On August 5, 2003, Petitioner filed a pro se motion to vacate his judgment of conviction, which on November 6, 2003 was denied without prejudice because Petitioner had failed to serve a complete set of papers. On September 11, 2003, Petitioner filed the instant petition. Because it was filed within a year of October 10, 2002, when Petitioner's judgment of conviction became final, the petition is timely. See 28 U.S.C. § 2254(d); Williams v. Artuz, 237 F.3d 147, 150-51 (2d Cir. 2001) (judgment of conviction becomes final ninety days after the New York Court of Appeals denied leave to appeal).

### III. Petitioner's Claims

In his Petition, Petitioner asserts four grounds for relief. In his first ground, Petitioner claims that in state court he was deprived of the opportunity to challenge the admissibility of the physical evidence against him or of Applewhaite's identification of him. (Id. at 5.) In his second ground, Petitioner claims that his conviction was tainted by police and prosecutorial misconduct. (Id.) In his third ground, Petitioner claims that his conviction was tainted by ineffective

3

assistance of counsel. Specifically, Petitioner claims that his counsel failed to: (1) conduct a timely and thorough investigation; (2) prepare adequately for trial; (3) consult with Petitioner; (4) investigate Petitioner's medical alibi; (5) expose prosecutorial misconduct; (6) protect Petitioner's Fourth Amendment and due process rights; (7) object to inadmissible evidence; (8) develop a viable defense strategy; (9) object to improper comments by the prosecutor in her summation; (10) move for a mistrial after the prosecutor commented on matters outside the record; and (11) present evidence. (Id. at 6.) Petitioner's fourth ground included three separate claims: that his right to a fair trial was violated when (1) the prosecutor intentionally violated the Speedy Trial Act of 1974, (2) evidence of other bad acts of Petitioner was improperly admitted; and (3) the prosecutor made inappropriate comments during summation. (Id. at 6-7.)

Petitioner conceded in his Petition that some of the grounds asserted therein were not exhausted, and he asked the court to stay consideration of his Petition so that he could exhaust his unexhausted claims. By Order dated June 27, 2005, the court denied Petitioner's request for a stay and dismissed Petitioner's unexhausted claims. (Docket Entry # 12.) See Rhines v. Weber, 544 U.S. 269, 278 (2005) ("[I]f a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief.") In that Order, as the briefing was then inadequate, the court did not delineate which of Petitioner's claims were exhausted and, by extension, which of Petitioner's claims were being dismissed. The court must therefore now determine which of Petitioner's claims were properly exhausted.

4

A.  Petitioner's Unexhausted Claims

Section 2254(b)(1)(A) of Title 28 provides that an application for a writ of habeas corpus may not be granted until the petitioner "has exhausted the remedies available in the [state] courts." To exhaust state remedies, a petitioner must fairly present his federal claims to the highest state court having jurisdiction over them. See Daye v. Attorney Gen. of New York, 696 F.2d 186, 191 (2d Cir. 1982) (en banc).

A review of the briefs submitted by Petitioner to the Appellate Division, Second Department reveals that only Petitioner's fourth ground and certain aspects of his third ground were properly exhausted. The three claims in Petitioner's fourth ground were exhausted because they were the three grounds raised in his initial brief to the Appellate Division, and in each case Petitioner cited the constitutional provision upon which he seeks to rely in his Petition. See Davis v. Strack, 270 F.3d 111, 122 (2d Cir. 2001) ("We have held that if a petitioner cites to specific provisions of the U.S. Constitution in his state court brief, the petitioner has fairly presented his constitutional claim to the state court.") As to the third ground, however, only those claims which Petitioner raised in his supplemental brief have been exhausted. See Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991) ("Since Rodriguez's claim of ineffective assistance of counsel can turn on the cumulative effect of all of counsel's actions, all his allegations of ineffective assistance should be reviewed together.") Petitioner did not raise in his supplemental brief the claims, raised in his Petition, that counsel failed to: (1) consult with Petitioner; (2) investigate Petitioner's medical alibi; and (3) protect his Fourth Amendment rights. Those claims have therefore not been exhausted, and they were therefore dismissed by the court's Order of June 27, 2005.

5

On February 16, 2006, Petitioner submitted an Amended Petition. (Docket Entry # 20.) Since those claims in the Amended Petition that have properly been exhausted, and which the court therefore allowed as amendments to the Petition, (see Memorandum & Order dated October 3, 2006 (Docket Entry # 23), merely amplify the grounds initially presented by Petitioner, the Amended Petition will be cited to as necessary below in lieu of citing to the Petition.

B. Petitioner's Speedy Trial Claim

Petitioner claims in his Amended Petition that violation of subsection 1(a) of New York Criminal Procedure Law Section 30.30, which generally requires the prosecution to be ready for trial within six months of the commencement of a felony action, deprived him of due process. He claims that the unlawful delay in his trial exacerbated inconsistencies in the testimony of Applethwaite and thereby prejudiced him.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Instead, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68. As the federal speedy trial law, Section 3161 et seq. of Title 18, is only triggered by a federal arrest upon a federal charge, see United States v. Woolfolk, 399 F.3d 590, 595 (4th Cir. 2005), Petitioner may only prevail if the delay in trying him implicated either his Sixth Amendment right to a speedy trial or his Fourteenth Amendment right to a fair trial.

Petitioner did not exhaust any Sixth Amendment claim in the state courts, as he neither cited the Sixth Amendment in his appellate briefs nor addressed any of the factors relevant to the Sixth Amendment speedy trial clause. See Barker v. Wingo, 407 U.S. 514, 530 (1972)

(establishing four-part test, taking into account length of delay, reason for delay, whether defendant asserted his speedy trial rights, and the prejudice caused by the delay); Cummings v. Burge, No. 03-CV-6632L (DGL) (VEB), 2008 WL 4458196, at *8 (W.D.N.Y. Sept. 23, 2008) ("District courts in [the Second] Circuit have held that a claim premised on C.P.L. § 30.30 is not tantamount to raising a claim that a petitioner's Sixth Amendment right to a 'speedy trial' has been violated.").

Petitioner's Fourteenth Amendment claim, assuming it was fairly presented to the Appellate Division by Petitioner's citation to the Fourteenth Amendment in his appellate briefs, is without merit. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.") Although a petitioner may invoke due process "to challenge delay both before and after official accusation," Doggett v. United States, 505 U.S. 647, 655 n.2 (1992), to prevail on such a claim, he must show that "he suffered actual prejudice as the result of the delay and that the delay was an intentional device to gain a tactical advantage." Denis v. Upstate Corr. Facility, 361 F.3d 759, 760 (2d Cir. 2004). Here, Petitioner has not made an adequate showing on either prong of this test. His allegation that the lapse in time caused Applewhaite's memory to significantly deteriorate is speculative, as is his unfounded accusation that the delay in prosecution was intentional. Petitioner's due process claim is therefore denied.

C. Petitioner's Other Bad Acts Claim

At trial, the prosecutor, over defense counsel's objection, elicited from Applewhaite that his attacker had told him: "Don't hit the wrong button or there's going to be a shoot-out, or you're going to get killed. . . I already have a murder case." (Trial Tr. 386.) Petitioner asserts

7

that the introduction of this evidence of prior bad acts denied Petitioner his right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment.

Since the appellate division denied Petitioner's claim on the merits, see King, 293 A.D.2d 628, 628, Petitioner may only prevail if he can show that the Appellate Division's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under this standard, Petitioner's claim fails, because the Supreme Court has specifically declined to decide "whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime." Estelle, 502 U.S. at 75 n.5. The Appellate Division's denial of Petitioner's claim therefore could not have resulted in a decision that was contrary to, or that unreasonably applied, clearly established Federal law, as determined by the Supreme Court.[1]

D.     Petitioner's Improper Summation Claim

Petitioner claims that the prosecutor's comments during summation, including that defense counsel's cross-examination and arguments on summation were "ridiculous," a "joke," and "an insult," (see Tr. 615-616), violated his Sixth and Fourteenth Amendment rights. Prosecutorial remarks may render a trial fundamentally unfair, and therefore compel habeas relief, where they cause substantial prejudice. The Second Circuit

> has applied a three-factor test in determining the existence of 'substantial prejudice' where a prosecutor's summation is challenged: the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.

---

[1] In any case, the evidence introduced cannot be said to have been highly prejudicial. The only factual question in the case against Petitioner was one of identity: was Petitioner the man who robbed the Martin Paints store? Until the jury determined that Petitioner was that man – and therefore guilty – the bad acts of the robber could not have prejudiced him.

8

Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (internal citation omitted). Here, however, the prosecutor's comments in her summation, however, were largely a reasonable response to defense counsel's repeated appeals to the common sense of the jury, for example, that "common sense also tells you someone who's going to rob someone is going to make sure that that mask is on at all times," (Tr. at 592), as well as to defense counsel's repeated characterization of the arguments of the prosecution as "ridiculous," and his efforts to impugn Applewhaite's integrity by implying that the robbery may have been an inside job, (see Tr. 408-09). See United States v. Thai, 29 F.3d 785, 807 (2d Cir. 1994) ("[T]he government is allowed to respond to an argument that impugns its integrity or the integrity of its case . . . and when the defense counsel have attacked the prosecutor's credibility or the credibility of the government agents, the prosecutor is entitled to reply with rebutting language suitable to the occasion.").

The possibly inappropriate comments of the prosecutor, that defense counsel's cross-examination had "victimized" Applewhaite, and that the jury should have been "insulted" by the distractions created by defense counsel, were not severe enough to cause Petitioner substantial prejudice. This is true even though the evidence against Petitioner was by no means overwhelming: There were significant inconsistencies between Applewhaite's testimony before the grand jury and his testimony at trial (see Tr. 437-48), and there was evidence at trial that Applewhaite initially stated to the police that his attacker had been wearing a mask and so could not be identified, (id. 527). Even taking into account the weakness of the state's case against Petitioner, the court's task here is to distinguish between "ordinary trial error of a prosecutor" and "egregious misconduct," see Donnelly v. DeChristoforo, 416 U.S. 637, 647-48 (1974), and the prosecutor's statements did not rise above the level of ordinary trial error.

E.  Petitioner's Ineffective Assistance of Counsel Claim

To demonstrate that counsel was constitutionally ineffective, first, a petitioner "must show that counsel's performance was deficient." Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. Courts must be highly deferential in pursuing this inquiry, making every effort "to eliminate the distorting effects of hindsight" and operating with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. More specifically,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

Id. at 690-91.

Petitioner, in his exhausted claims of ineffective assistance of counsel, claims that his counsel failed to: (1) conduct a timely and thorough investigation; (2) prepare adequately for trial; (3) expose prosecutorial misconduct; (4) object to inadmissible evidence; (5) develop a viable defense strategy; (6) object to improper comments by the prosecutor in his summation; (7) move for a mistrial after the prosecutor commented on matters outside the record; and (8) present evidence.

A review of the record, however, reveals that Petitioner's trial counsel was an effective advocate, whose performance fell well within the range of reasonably professional assistance. Trial counsel had an effective trial strategy, based on uncovering significant discrepancies and improbabilities in Applewhaite's trial testimony, which he pursued by aggressively cross-examining Applewhaite on his trial testimony and grand jury testimony (see, e.g., Tr. 486) and

10

by calling Detective Wiencko to cast doubt on whether Applewhaite actually had a recollection of his attacker's appearance (id. at 554). Trial counsel made proper objections, many of which were successful. (See, e.g., id. at 502-09 (objecting to introduction of evidence that Petitioner's photo was in a police photo book).) As discussed above, the prosecutor's comments during summation were largely proper, and therefore not likely to warrant a mistrial. See United States v. Abad, 514 F.3d 271, 276 (2d Cir. 2008) ("counsel could not . . . have been ineffective for failing to make a motion that would have been futile"). Petitioner's claims that his counsel should have conducted a more thorough investigation to conduct exculpatory evidence is based wholly on speculation, as he has not actually shown that any such investigation would have resulted in evidence of significant exculpatory value.[2] (See, e.g., Am. Pet. at 24-25.)

Because Petitioner's trial counsel was an effective advocate, the Appellate Division's determination that Petitioner's claim of ineffective assistance of counsel is without merit is entitled to this court's deference under Section 2254(d) of Title 28.

## IV. Conclusion

For the reasons stated above, the Petition is DENIED. A certificate of appealability shall not issue. The Clerk of the Court is directed to close the case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
December 16, 2008

NICHOLAS G. GARAUFIS
United States District Judge

---

[2] The court has wide discretion whether to hold a hearing to allow Petitioner to prove the factual allegations in his Petition. Schriro v. Landrigan, 127 S. Ct. 1933, 1939 (2007). Because the factual allegations in his Petition are largely irrelevant and, even if true, would not entitle Petitioner to habeas relief, it would be inappropriate to hold such a hearing. See id. at 1940 ("a federal court must consider whether such a hearing would enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief").

11